**ADO FINANCE, AG, a Swiss corporation, Plaintiff,**

v.

**McDONNELL DOUGLAS CORPORATION, a Maryland corporation, Defendant.**

**McDONNELL DOUGLAS CORPORATION, a Maryland corporation, Counterclaimant,**

v.

**ADO FINANCE AG, a Swiss corporation; Alfred Steinbrugger; Anstalt Fur Investition, a Liechtenstein entity; and Premanda Anstalt, a Liechtenstein entity, Counterclaim Defendants.**

No. CV–93–2795–KMW (CTx).

United States District Court, C.D. California.

Aug. 7, 1996.

592

Kimiyo T. Endo, Pension Benefit Guaranty Corporation, Washington, DC, Gwendolyn Gamble, United States Attorney Office, Los Angeles, CA, for Pension Benefit Guaranty Corporation.

Andrew R. McCorkle, Reish & Luftman, Washington, DC, Joseph C. Faucher, Reish & Luftman, Los Angeles, CA, for Carter and Tillery Enterprises, et al.

James Wawro, Anthony Russo, James R. Stewart, Magara Lee Crosby, Morgan, Lewis & Bockius LLP, Los Angeles, CA, for Ado Finance, AG.

Robert F. Scoular, Sue L. Himmelrich, Susan M. Walker, Sonnenschein Nath & Rosenthal, James J. Quinn, Margaret M. Morrow, J. David Oswalt, Quinn, Kully and Morrow, Los Angeles, CA, for McDonnell Douglas Corporation.

## ORDER IMPOSING MONETARY SANCTIONS AGAINST ADO FINANCE, AG AND ITS COUNSEL OF RECORD, MORGAN, LEWIS & BOCKIUS

WARDLAW, District Judge.

Defendant and Counterclaimant McDonnell Douglas Corporation ("McDonnell") filed a motion for sanctions against Plaintiff and Counterclaim Defendant ADO Finance, AG ("ADO") and its attorneys of record, James Wawro, Anthony Russo, James Stewart, and the law firm of Morgan, Lewis & Bockius LLP ("Morgan, Lewis"). It argued that ADO made misrepresentations to the Court. On April 25, 1996, the Court granted the sanctions motion, ordering remedial sanc-

tions against ADO and setting a briefing schedule on the issue of monetary sanctions. It now orders ADO and Morgan, Lewis to pay McDonnell $138,970.55 for attorney's fees that it incurred as a result of the misrepresentations. It also orders ADO and Morgan, Lewis to pay into the Court $10,000 in sanctions.

## I. BACKGROUND

### A. The Lawsuit

McDonnell contracted with ADO for the sale of MD–11 aircraft. According to ADO, the MD–11s that McDonnell provided could not meet the performance guarantees included in the contract. It filed the instant lawsuit on May 13, 1993, alleging breach of contract, deceit, negligent misrepresentation, fraud, conversion, mistake, failure of consideration, and unjust enrichment. McDonnell filed a counterclaim on July 27, 1993, asserting that ADO breached the contract by failing to make progress payments as they came due.

McDonnell also filed a lawsuit against ADO regarding the sale of ten MD–83 aircraft. Judge A. Wallace Tashima consolidated the two actions on August 1, 1994.

### B. Swiss Attachment Proceedings

While these lawsuits were pending before Judge Tashima, ADO submitted an *ex parte* application for attachment to the presiding judge of the court in Berne, Switzerland.[1] Scoular Decl. ¶ 4 & Ex. B. It sought to attach approximately SFr. 84,491,782 that the Swiss government owed McDonnell for F/A–18 fighter/attack aircraft. *Id.* ¶ 2. ADO included in its application a copy of Judge Tashima's April 10, 1995 order to support its argument that Judge Tashima had held that McDonnell defrauded ADO. *Id.* ¶ 10 & Ex. E. Contrary to this representation, Judge Tashima's April 10 order merely allowed the discovery of "the White Paper," an internal McDonnell document stating that it might not be able to meet the guarantees in its contract with ADO. Indeed, Judge

---

1. ADO filed this *ex parte* application on May 9, 1995. It withdrew a similar *ex parte* application for attachment that it had filed on April 26, 1995.

Tashima clearly explained that the April 10 order "makes no judgments or draws no conclusion on the merits of plaintiff's fraud claims." Order of Judge Tashima (April 28, 1995).

The Swiss court issued an attachment order on May 19, 1995. *Id.* ¶ 2.

## C. Swiss Payment Order Proceedings

On May 24, 1995, ADO filed an *ex parte* Request for Payment Order with the Debt Collection Agency, the Swiss government office that effectuates attachments. *Id.* ¶ 20. It requested an order requiring the Swiss government to pay the attached monies directly to it, not the Debt Collection Agency. *Id.* ¶ 25. Furthermore, it requested an immediate payment instead of a post-judgment payment. On June 21, 1995, the Debt Collection Agency issued a payment order for SFr. 84,491,782. *Id.*

## D. Preliminary Injunction Motions

### 1. First Preliminary Injunction Motion

McDonnell learned about the attachment order in late May 1995. *Id.* ¶ 18. On June 5, 1995, it filed an application requesting that Judge Tashima issue a temporary restraining order, prohibiting ADO from proceeding with the Swiss attachment. *Id.* ¶ 21. Judge Tashima denied the application but issued an order to show cause why he should not grant a preliminary injunction. *Id.*

Judge Tashima denied the motion for a preliminary injunction on June 26, 1995. He found that ADO's representations about his April 10 order to the Swiss court were "gross mischaracterization[s]." Tr. of June 26, 1995 Proceedings at 25:5–8. He nevertheless held that McDonnell failed to demonstrate that the attachment proceedings would cause it irreparable harm, noting that "we're talking about money. Money is hardly ever irreparable harm and certainly that kind of money in this context is not going to lead to irreparable harm." *Id.* at 26:2–6. He also stated that "the money doesn't go to the attaching party but it goes to some government register." *Id.* at 26:16–19.

ADO failed to inform Judge Tashima that, under the payment order, the money would, in fact, go to the attaching party, not a government register. Furthermore, it stated half-truths and affirmatively misrepresented the status and nature of the Swiss proceedings. For example, ADO's Swiss counsel submitted a declaration, stating that "[p]ursuant to the Swiss judicial system, the creditor has no right to dispose of or otherwise avail himself of attached funds and assets other than by collecting a final judgment against the debtor." Stadelhofer Decl. ¶ 11, *contained in* Scoular Decl. Ex. H. He also represented that "[t]he Swiss attachment proceedings have been concluded and the court's attachment order has been sent out for attachment to the Swiss government agency.... No further action is required or contemplated by ADO." *Id.* ¶ 18.

In its written opposition to the motion for a preliminary injunction, ADO stated that "[n]othing has taken place other than the temporary detention under Swiss law of a minor portion of [McDonnell's] total assets." Opposition to Preliminary Injunction at 6, *contained in* Scoular Decl. Ex. I. It also represented in those papers that "the ultimate disposition of any attached property is dependent on the final judgment of this Court." *Id.* at 12.

At oral argument on the preliminary injunction motion, Anthony Russo, ADO's American counsel, stated that "[o]ur attachment is resulting in Douglas' assets being attached but that's all that's happening in Switzerland." Tr. of June 26, 1995 Proceedings at 17:15–16.

On August 4, 1995, after Judge Tashima had issued his ruling on the preliminary injunction motion, Morgan, Lewis filed a declaration entitled "Declaration of James Wawro Concerning Recent Developments in Swiss Attachment Proceeding." Wawro Decl., *contained in* Scoular Decl.Ex. K. The declaration generally explains the procedure for obtaining attachments and payment orders under Swiss law. It states that a party who has received an attachment order may also obtain a payment order mandating prejudgment payment of the attached funds if the opposing party does not object to the payment order. *Id.* ¶ 1. It then states that

ADO's Swiss counsel had obtained a payment order and that McDonnell did not object to it. *Id.* ¶ 2. The declaration does not explain that McDonnell failed to object to the payment order because it did not know about the order.[2]

Morgan, Lewis admits that it knew that information in the declaration might cause Judge Tashima to alter his ruling on the preliminary injunction motion. Tr. of March 4, 1996 Proceedings at 36:20–22. But the language and tone of the declaration create the impression of a status report, rather than a revelation that Morgan, Lewis made material misrepresentations to the Court in its papers and oral argument opposing the preliminary injunction motion. For example, the declaration carefully avoids mentioning that ADO had obtained the payment order before Judge Tashima heard oral argument on the preliminary injunction motion. This fact renders false the representations that a government register would hold the attached funds pending a judgment and that having obtained an attachment order, ADO did not contemplate instituting further actions in Switzerland.

### 2. Second Preliminary Injunction Motion

The August 4 declaration alarmed McDonnell and spurred it to determine whether a payment order, in fact, existed. After it substantiated the order's existence, it again moved for a preliminary injunction. On March 4, 1996, this Court heard oral argument on the motion. It found that the motion was properly styled as a motion for reconsideration and denied the motion. It held that "for reasons of comity and other reasons stated by Judge Tashima previously, it [is not] appropriate ... to enjoin the [Swiss] proceedings." Tr. of March 6, 1996 Proceedings at 54:9–13. It noted that "[i]n any event, [the Swiss proceedings] seem to be stayed...." *Id.* at 54:12–13.

### E. Procedural History of the Sanctions Motion

On January 2, 1996, McDonnell filed a motion for sanctions against ADO and its

attorneys of record, James Wawro, Anthony Russo, James Stewart, and the law firm of Morgan, Lewis & Bockius LLP, under Rule 11 of the Federal Rules of Civil Procedure, 28 U.S.C. § 1927, Local Rule 27, and the Court's inherent powers. McDonnell asserted that it was entitled to remedial and monetary sanctions because ADO misrepresented the nature of the Swiss proceedings to Judge Tashima and because it misrepresented the nature of Judge Tashima's order to the Swiss court. On March 4, 1996, this Court ruled that an award of sanctions was warranted. *Id.* at 54:21–22. It noted that even during oral argument on the sanctions motion, ADO's counsel continued to obfuscate the true nature of the Swiss proceedings. *Id.* at 53:12–14. It invited McDonnell to craft a proposed order regarding remedial and monetary sanctions.

On March 28, 1996, the Court held a hearing on McDonnell's proposed order. At that hearing, it found that the sanctionable conduct was misrepresenting the nature of the Swiss proceedings to this Court. Tr. of March 28, 1996 Proceedings at 49:25–50:3. It ruled that "the predominant entity at fault ... is ADO ... [i]n terms of intentional deception [and] keeping lawyers in the dark or not fully informing the lawyers of everything that's going on in order to secure an improper advantage in this case." *Id.* at 43:13–18. Although ADO was primarily at fault, its lawyers failed to "make the reasonable inquiry required by Rule 11," so they were not blameless. *Id.* at 43:18–20. Because the Court did not find ADO and its attorneys to be equally blameworthy, it held that ADO and its attorneys would not be jointly and severally liable for the monetary sanctions. *Id.* at 43:21–22. Instead, ADO would be required to pay seventy-five percent of the sanctions, and its attorneys would be required to bear twenty-five percent. *Id.* at 43:25–44:2. Additionally, it held that Morgan, Lewis, not the individual attorneys, would be liable for the sanctions. *Id.* at 44:2–3.

---

**2.** ADO sent notice of the payment order to a post office box in Missouri instead of sending notice to McDonnell's outside or in-house counsel. By the time McDonnell's lawyers learned of the order, they had missed the deadline for filing an objection.

On April 25, 1996, the Court issued an order requiring ADO to withdraw its Swiss attachment and payment actions.[3] It now must consider the issue of appropriate monetary sanctions.

## II. LEGAL STANDARD GOVERNING SANCTIONS

■ The Court derives the authority to award monetary sanctions against ADO for misrepresenting the nature of the Swiss proceedings from Rule 11 of the Federal Rules of Civil Procedure, 28 U.S.C. § 1927, Local Rule 27, and its inherent powers. The monetary sanctions may take the form of an award of attorney's fees to opposing counsel. 28 U.S.C. § 1927; Fed.R.Civ.P. 11(c)(2); C.D.Cal.R. 27.1. The purpose of an attorney's fee award is to deter undesirable conduct. Fed.R.Civ.P., 11(c)(2); *Beatrice Foods Co. v. New England Printing & Lithographing Co.*, 899 F.2d 1171, 1177 (Fed.Cir.1990) (holding that a "principal purpose" of section 1927 is deterrence); *Brown v. Baden (In re Yagman)*, 796 F.2d 1165, 1184 (9th Cir.1986), *cert. denied*, 484 U.S. 963, 108 S.Ct. 450, 98 L.Ed.2d 390 (1987) (stating that the "overriding purpose" of Rule 11 is deterrence).

■ If the Court awards attorney's fees, they must have been incurred as a direct result of the sanctionable conduct. 28 U.S.C. § 1927; Fed.R.Civ.P. 11(c)(2). Furthermore, they must be reasonable. 28 U.S.C. § 1927; Fed.R.Civ.P. 11(c)(2); *Yagman*, 796 F.2d at 1185. When examining whether fees are reasonable, courts consider factors such as: (1) the time and labor necessary to perform the tasks for which the attorney seeks fees; (2) the novelty and difficulty of the issues involved; (3) the skill required to perform the legal task properly; (4) the inability to accept other employment while performing the task; (5) the customary fee; (6) whether the fee was contingent or fixed; (7) time limitations; (8) the amount at stake and the results obtained; (9) the experience and reputation of the attorneys; (10) the undesirabil-

ity of the case; (11) the nature and length of the attorney's relationship with the client; and (12) awards in similar cases. *Super Power Supply, Inc. v. Macase Industrial Corp.*, 154 F.R.D. 249, 258 n. 14 (C.D.Cal. 1994). A fee award should "never exceed those expenses and fees that were reasonably necessary to resist the offending action." *Yagman*, 796 F.2d at 1185. Implicit in this requirement is a duty on behalf of the party seeking the fees to mitigate its fees and expenses. *Id.*

## III. EXAMINATION OF McDON-NELL'S REQUEST FOR AT-TORNEY'S FEES

A. Description of the Request

McDonnell asks the Court to award it $563,061.15 in attorney's fees and $57,526.30 in costs. Himmelrich Decl. Ex. A. The fee request encompasses fees that McDonnell incurred when it prosecuted the motion for sanctions and the two preliminary injunction motions. *Id.* Additionally, the request encompasses the fees that McDonnell incurred when it attacked the Swiss attachment and payment order. *Id.*[4]

B. Fees and Costs Directly Related to the Sanctionable Conduct

■ The Court is sanctioning ADO and Morgan, Lewis for misrepresenting the nature of the Swiss proceedings to this Court. Tr. of March 28, 1996 Proceedings at 49:25–50:3. It must decide which portion of the cost and fee request is directly related to this sanctionable conduct.

1. Fees and Costs Incurred Attacking Swiss Attachment

The fees and costs that McDonnell incurred when it attacked the Swiss attachment order are not directly related to the sanctionable conduct here. McDonnell's argument that if ADO and its lawyers had told Judge Tashima about the payment order, he

3. At oral argument on March 28, 1996, ADO consented to withdraw these actions.

4. The Court finds that the categories McDonnell designates as nullity, payment order, bond, and Swiss attachment represent fees incurred in at-

tacking the Swiss attachment and payment order. Specifically, the categories nullity, bond, and Swiss attachment represent fees incurred while attacking the attachment order.

would have enjoined them from enforcing the Swiss attachment order is unconvincing. Judge Tashima knew about the attachment proceeding and refused to enjoin it, observing principles of comity and finding that McDonnell had not demonstrated irreparable harm. It is unlikely that information about the payment order would have altered this ruling. Although it is likely that Judge Tashima would have enjoined ADO from enforcing the payment order if he had known of its existence, his concerns about comity and the lack of demonstrated irreparable harm would have precluded him from enjoining the attachment proceeding too.[5]

### 2. Fees and Costs Incurred Attacking Swiss Payment Order

■ The fees and costs that McDonnell incurred when it attacked the Swiss payment order are directly related to the misrepresentations that ADO and its attorneys made to Judge Tashima. If ADO and its attorneys had disclosed the existence of the payment order to Judge Tashima, it is probable that he would have enjoined them from enforcing it. Although comity concerns encourage restraint in enjoining foreign proceedings, a court may enjoin a party from pursuing such proceedings when they threaten its ability to effectuate its judgments or when they are vexatious. *See Seattle Totems Hockey Club, Inc. v. National Hockey League*, 652 F.2d 852, 855–56 (9th Cir.1981); 11A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure*, § 2942, at 61–63 (2d ed. 1995). Certainly a court has the power to enjoin a party before it—here, the plaintiff, from pursuing activities elsewhere, "when it is necessary to preserve the integrity of the Court's own orders." *Omnium Lyonnais D'Etancheite et Revetement Asphalte. v. Dow Chem. Co.*, 441 F.Supp 1385, 1390 (C.D.Cal.1977). If ADO obtained

funds belonging to McDonnell before the Court adjudicated the merits of this lawsuit, it would have an incentive to dissipate the funds and cease participating in the suit. Judge Tashima would likely have enjoined ADO from enforcing the payment order to preclude it from making an end run around the obligation to litigate the case before benefitting from a damages award. McDonnell would not have had to attack the payment order in Switzerland if it had obtained this injunction.[6]

### 3. Fees and Costs Incurred Bringing the First Motion for Preliminary Injunction

The fees and costs that McDonnell incurred when it brought the first motion for a preliminary injunction are not directly related to the sanctionable conduct. Certainly, the sanctionable conduct occurred when ADO and its attorneys misrepresented the nature of the Swiss proceedings in the papers they filed in opposition to the motion, during the oral argument on the motion, and in the less than forthcoming August 4 declaration. Nevertheless, the fact that McDonnell filed the motion before it knew about the payment order evidences that it would have filed the motion whether or not ADO and Morgan, Lewis had failed to disclose its existence. Thus, the fees it incurred by prosecuting the motion are not directly related to the sanctionable conduct.[7]

### 4. Fees and Costs Incurred Bringing the Second Motion for Preliminary Injunction

The fees and costs that McDonnell incurred when it brought the second motion for a preliminary injunction are directly related to the sanctionable conduct. Judge Tashima stated that one of the reasons that he denied

---

5. Certainly, ADO and its attorneys behaved questionably before the Swiss court when they misrepresented that Judge Tashima had held that McDonnell defrauded it. McDonnell's remedies for that misconduct lie in the Swiss courts, however—not here.

6. The remedial sanction ordered by this Court on April 24, 1996, attached here as Appendix D, "Order Granting McDonnell Douglas Corpora-

tion's Motion For Sanction" accomplishes this very result.

7. Although attorney's fees are not an appropriate sanction for the misrepresentations that ADO and Morgan, Lewis made when opposing the first preliminary injunction motion, this behavior was egregious. Thus, the Court will order ADO and Morgan, Lewis to pay monetary sanctions to it. *See infra* Part IV.

the first motion was that "the money doesn't go to the attaching party but it goes to some government register." Tr. of June 26, 1995 Proceedings at 26:16–19. Because the payment order caused the attached monies to go directly to ADO, one of the premises for denying the motion was incorrect. McDonnell reasonably believed that if it explained that the premise was incorrect, Judge Tashima would change his mind. It would not have needed to explain that the premise was false if ADO and its counsel had disclosed the existence of the payment order.

### 5. Fees and Costs Incurred Bringing the Motion for Sanctions

The fees and costs that McDonnell incurred when it brought the motion for sanctions are directly related to the sanctionable conduct. "If warranted, the court may award to the party prevailing on the motion [for sanctions] the reasonable expenses and attorney's fees incurred in presenting or opposing the motion." Fed.R.Civ.P. 11(c)(1)(A). ADO argues that the Ninth Circuit has ruled that fees and expenses incurred in prosecuting a Rule 11 motion may not be included in a sanctions award. *See Zimmerman v. Bishop Estate*, 25 F.3d 784, 790 (9th Cir.), *cert. denied*, — U.S. —, 115 S.Ct. 637, 130 L.Ed.2d 543 (1994); *Lockary v. Kayfetz*, 974 F.2d 1166, 1178 (9th Cir.1992), *cert. denied*, 508 U.S. 931, 113 S.Ct. 2397, 124 L.Ed.2d 298 (1993). However, these cases construed Rule 11 before the December 1, 1993 effective date of its amendment that specifically allows courts to award fees and expenses incurred in filing and arguing a Rule 11 motion. *See* Gregory P. Joseph, *Sanctions: The Federal Law of Litigation Abuse* § 16(B)(17)(e), at 282–83 (1994) (stating that the 1993 amendment alters the rule that a party may not recover the fees that it incurs when it prosecutes a motion for sanctions). The Ninth Circuit has not yet construed the 1993 amendment. Because it has not spoken on the issue, this Court adopts the plain meaning of the amendment and allows McDonnell to recover the fees and expenses incurred in prosecuting the Rule 11 motion.

### C. Reasonable Fees and Costs

Having determined that the fees and costs that McDonnell incurred when it (1) attacked the Swiss payment order; (2) brought the second motion for a preliminary injunction; and (3) brought the motion for sanctions are directly related to the sanctionable conduct, the Court must determine if these fees and costs are reasonable.

#### 1. Costs

■ Although the Court has found that the costs McDonnell incurred when attacking the payment order, bringing the second preliminary injunction motion, and bringing the motion for sanctions are directly related to the sanctionable conduct, it cannot award these costs as sanctions. McDonnell has submitted a chart that shows which of the four firms representing it incurred which costs. Himmelrich Decl. Ex. A. However, it does not explain which costs are attributable to which legal tasks. The Court cannot allocate the costs to the legal tasks without being arbitrary and possibly unfair. For example, McDonnell may have incurred all of its facsimile expenses when it attacked the attachment order. The Court has decided not to award McDonnell the fees and costs it incurred attacking the attachment order. Thus, forcing ADO to pay for these costs would be unfair.

#### 2. Attorney's Fees

■ In crafting this attorney's fees award, the Court is mindful that McDonnell had a duty to mitigate the fees it incurred. *Yagman*, 796 F.2d at 1185. A party fails to satisfy this duty when it overlawyers its responses to the sanctionable conduct. *See White v. General Motors Corp.*, 908 F.2d 675, 684 (10th Cir.1990), *cert. denied*, 498 U.S. 1069, 111 S.Ct. 788, 112 L.Ed.2d 850 (1991); *Cleveland Demolition Co. v. Azcon Scrap Corp.*, 827 F.2d 984, 988 (4th Cir.1987); Gregory P. Joseph, *Sanctions: The Federal Law of Litigation Abuse* § 16(D)(5)(a), at 297 (1994).

■ McDonnell hired four law firms to represent it in this matter: Sonnenschein Nath & Rosenthal ("Sonnenschein"); Quinn,

Kully and Morrow ("Quinn"); Baker & McKenzie; and von Erlach Klainguti Stettler Wille & Partner ("von Erlach"). Sonnenschein was the lead counsel. It oversaw and coordinated the litigation. Additionally, it had primary responsibility for drafting and arguing the motions filed in this Court.

The Zurich office of Baker & McKenzie had primary responsibility for drafting and arguing the motions filed with the Swiss courts. It reported to and took direction from Sonnenschein.

Quinn acted as a litigation consultant. It reviewed motions and papers that the other firms drafted. *See* Himmelrich Decl.Ex. C at 312–13; *id.* at 320. Then, it advised them about how to improve the papers. *See, e.g., id.* at 313. It also helped them strategize.

Von Erlach also acted as a litigation consultant. It advised Sonnenschein about Swiss procedure. *Id.* Ex. E at 432. It reviewed papers that other firms drafted and commented on them. *Id.* at 436, 437, 441.

An award allowing McDonnell to recover the fees that it owes all four firms would "exceed those expenses and fees that were reasonably necessary to resist the offending action." *Yagman,* 796 F.2d at 1185. Forcing ADO to pay the administrative costs of coordinating the firms and the cost of having one firm review another firm's work is not fair or reasonable as a sanctions award. Thus, the Court will award McDonnell the reasonable fees of the firm with direct and primary responsibility for attacking the payment order, prosecuting the second preliminary injunction motion, and bringing the motion for sanctions. By this finding, the Court does not speak to McDonnell's business judgment that this level of lawyering was necessary under the *circumstances of the case.* Instead, it finds that reimbursement for this level of lawyering would not be reasonable as an award of sanctions.

### a. Payment Order

■ Baker & McKenzie had primary responsibility for attacking the payment order.

It charged McDonnell $43,707 to complete this task.

■ The Swiss court has already awarded McDonnell the attorney's fees it incurred when it opposed the payment order. ADO's Memorandum Ex. 2. However, the Swiss court did not award McDonnell the attorney's fees it incurred when it appealed the order. Allowing McDonnell to recover the same attorney's fees twice is unreasonable. Thus, the Court will award it only the fees that Baker & McKenzie charged it for appealing the payment order.

Examining Baker & McKenzie's billing statements, the Court determines that it charged McDonnell $10,232.20 to oppose the payment order.[8] *See* Appendix A (calculating the fees that Baker & McKenzie charged McDonnell for opposing the payment order). Subtracting $10,232.20 from the $43,707 that Baker & McKenzie charged McDonnell to attack the payment order yields $33,474.80

Awarding McDonnell $33,474.80 for attacking the payment order on appeal is reasonable. The appeal was difficult because it had to address both the Swiss law governing payment orders and issues of comity. Additionally, it was important to McDonnell because it addressed who would take possession of approximately $81 million that belonged to McDonnell.

### b. Second Preliminary Injunction Motion

■ Sonnenschein had primary responsibility for bringing the second preliminary injunction motion. It charged McDonnell $42,911 to perform this task. In keeping with its decision to award only the fees of the firm with primary responsibility for each task, the Court subtracts $976 in fees that represent Sonnenschein's conversations with Quinn about the preliminary injunction motion. *See* Appendix B (calculating the fees charged for discussions with Quinn). Subtracting $976 from $42,911 yields $41,935.

Awarding McDonnell $41,935 for bringing the second preliminary injunction motion is reasonable. Although much of the motion

---

8. The Court notes that the Swiss court awarded McDonnell roughly $9756.10 in fees. ADO's

Memorandum at 4.

was similar to the first preliminary injunction motion, Sonnenschein had to recast its arguments in an attempt to overcome Judge Tashima's objections to the first motion. Furthermore, Sonnenschein did not argue about the payment order in its first motion, so this issue was new. It was also difficult. Sonnenschein had to research Swiss law and procedure to understand the payment order. It also had to procure declarations and evidence about the payment order.

### c. Motion for Sanctions

 Sonnenschein also had primary responsibility for bringing the sanctions motion. It charged McDonnell $64,516 to perform this task. Again, the Court subtracts $955.25 in fees that represent strategy sessions with Quinn and fees that Sonnenschein does not adequately explain. *See* Appendix C. Subtracting the fee reduction of $955.25 from $64,516 yields $63,560.75.

Awarding McDonnell $63,560 for bringing the motion for sanctions is reasonable. Calculating the fees that the four firms had charged McDonnell was time-consuming. Allocating the fees to each legal task was also time-consuming. And redacting the timesheets was time-consuming. Furthermore, the motion required Sonnenschein to research and brief the difficult issue of whether the Court could enjoin a foreign proceeding as a remedial sanction.

## IV. SANCTIONS TO BE PAID TO THE COURT

 Although the Court cannot award McDonnell the attorney's fees it expended to prosecute the first motion for a preliminary injunction, it orders ADO and Morgan, Lewis to pay it $10,000 in sanctions. The misrepresentations that ADO and Morgan, Lewis made to Judge Tashima in conjunction with the first preliminary injunction motion have resulted in the waste of scarce judicial resources. The Court has expended countless, unnecessary hours holding hearings and considering papers regarding these misrepresentations. It had to hear oral argument and evaluate the papers, declarations, and

exhibits regarding the second preliminary injunction. It held two lengthy hearings on the sanctions motion. It waded through voluminous papers, declarations, and billing statements regarding the sanctions motion. Ordering ADO and Morgan, Lewis to pay for the misrepresentations giving rise to this waste of judicial resources is only fair.

## V. CONCLUSION

The Court sanctions ADO and Morgan, Lewis for misrepresenting the nature of the Swiss proceedings. It orders them to pay McDonnell $138,970.55 in attorney's fees that it incurred as a direct result of the misrepresentations. It also orders them to pay it $10,000 in sanctions. Morgan, Lewis shall pay twenty-five percent of these amounts, and ADO shall pay seventy-five percent.

## IT IS SO ORDERED.

**APPENDIX A—Calculation of the Time that Baker & McKenzie Expended Opposing the Payment Order**

| Attorney | Task | Time | Fee |
|---|---|---|---|
| Vogel | Telephoned Collection Agency about opp'n (360) | .80 | 416.80 |
| Berni | Conference re: opp'n; Research re: opp'n (360) | 4.50 | 1368.00 |
| Affentranger | Research re: opp'n (360–61) | .50 | 143.50 |
| Zenhausern | Research re: opp'n; phone calls re: opp'n (361) | 5.00 | 1435.00 |
| Berni | Phone calls re: opp'n (362) | 1.00 | 304.00 |
| Affentranger | Research re: opp'n (363) | 4.00 | 1148.00 |
| Martin [9] | Review of Request to Permit Opposition (363) | 1.50 | 781.50 |
| Berni | Phone calls, conferences, and other work on opp'n (364) | 8.30 | 2523.20 |
| Vogel | Review of brief requesting permission to oppose (365) | .70 | 364.70 |
| Berni | Work on renewal of opp'n (367) | 1.00 | 304.00 |
| Affentranger | Made phone calls, file notes about the opp'n (367–68) | 4.50 | 1291.50 |
| Berni | Work on opp'n (368–69) | .50 | 152.00 |

10232.20

9. McDonnell did not give the Court any information about Martin's hourly billing rate. The Court, thus, assumes that he billed at $521/ hour—the rate for a Baker & McKenzie partner in the Zurich office.

APPENDIX B—Calculation of Fees Sonnenschein Charged for Conversations with Quinn, Kully and Morrow About Second Preliminary Injunction Motion

| Attorney | Task | Time | Fee |
|---|---|---|---|
| Scoular | Prepared for conference with Quinn and Oswalt (194) | 1.00 | 261.00 |
| Scoular | Conference with Oswalt (248) | .50 | 130.50 |
| Scoular | Conference with Oswalt (253) | .50 | 130.50 |
| Hansen | Conference with Oswalt (257) | 1.00 | 193.00 |
| Scoular | Conference with Quinn and Oswalt (300) | 1.00 | 261.00 |
| | | | 976.00 |

APPENDIX C—Calculation of Subtractions From Sanctions Motion Fee Request

| Attorney | Task | Time | Fee |
|---|---|---|---|
| Marder | Phone conference re: FRCP 64 research (171) [10] | .25 | 47.50 |
| Scoular | Prepare for meeting with Quinn (194) | 1.00 | 261.00 |
| Scoular | Phoned Oswalt and Quinn (235) | .75 | 195.75 |
| Himmelrich | Research re: comity and preliminary injunction (236) [11] | 1.00 | 190.00 |
| Scoular | Conference with Quinn (300) | 1.00 | 261.00 |
| | | | 955.25 |

## APPENDIX D

Filed April 25, 1996

### ORDER GRANTING McDONNELL DOUGLAS CORPORATION'S MOTION FOR SANCTIONS

WARDLAW, District Judge.

Defendant and counterclaimant McDonnell Douglas Corporation's ("MDC") motion for sanctions, pursuant to Rule 11, Fed.R.Civ.P., 28 U.S.C. § 1927, Local Rule 27, and the Court's inherent powers, against plaintiff and counterclaim defendant ADO Finance AG ("ADO") and its attorneys of record, James Wawro, Anthony Russo, James Stewart, and the law firm of Morgan, Lewis & Bockius LLP, ("ML & B"), came on for hearing on March 4, 1996 and March 28, 1996. Having considered all of the papers filed in support of and in opposition to the motion, the arguments of counsel, and good cause appearing therefor, the Court orders as follows:

IT IS HEREBY ORDERED that the motion is granted pursuant to Rule 11, Fed. R.Civ.P., 28 U.S.C. § 1927, Local Rule 27, and the Court's inherent powers. ADO and its counsel, ML & B, are sanctioned for their conduct as follows:

1. Within two Court days of March 28, 1996, ADO shall take all steps necessary to effectuate the withdrawal of debt collection No. 9519224 pending before the Collection Agency of Berne, Switzerland (the proceeding instituted by ADO to attempt to collect MDC's attached assets) as well as the withdrawal of the payment order issued in connection therewith. Concurrently with ADO's withdrawal of debt collection No. 9519224 and the payment order, ADO is ordered to notify the following Swiss authorities about such withdrawal: the Supervisory Board in Debt Collection and Bankruptcy Matters of the Canton of Berne (concerning proceeding No. 353/95, MDC's complaint against the order of the Collection Agency of Berne of August 2, 1995); the President of the Judges' Office IV of Berne (concerning MDC's request for permission to file subsequent opposition to the payment order in debt collection No. 9519224); and the Court of Appeals of the Canton of Berne (concerning proceeding No. 648/1/95, MDC's nullity complaint against the attachment order of May 19, 1995).

2. ADO is restrained and enjoined from receiving any of MDC's assets pursuant to any attachment or debt collection proceeding in Switzerland which arises out of this lawsuit, obtaining payment of any of the moneys that are subject to the Swiss attachment, or taking possession of any of MDC's funds pending the final judgment in this action, including the exhaustion of all appeals if judgment is stayed pending appeal.

3. ADO shall provide the Court, MDC's counsel of record in this action and MDC's counsel in the Swiss proceedings with notice by telefacsimile and certified mail, of any action taken by ADO in connection with any

10. Sonnenschein researched Rule 64 of the Federal Rules of Civil Procedure when it prosecuted its appeal of Judge Tashima's denial of the first preliminary injunction motion. It seems to have inadvertently included this charge with the sanctions motion charges.

11. Fees for work on the sanctions motion cannot include fees for work on other motions.

attachment or application for attachment against MDC's assets in Switzerland or any debt collection or application for a debt collection or any request for a payment order or the issuance of any payment order against MDC in Switzerland. Any papers submitted by ADO or MDC in connection with any Swiss proceeding shall be served by hand on each party's Swiss and U.S. counsel on the date of any such submission. The names, addresses, and telephone numbers of MDC's Swiss counsel are as follows:

Dr. Iur. Urs Zenhausern
Baker & McKenzie
Zollikerstrasse 225
Postfach 57
8034 Zurich
Switzerland

Telephone: (011–41–1) 384 14 14

Dr. Beat von Rechenberg

von Erlach Klainguti Stettler Wille & Partners

Dreikoenigstrasse 7
Postfach
CH–8022 Zurich
Switzerland

Telephone: (011–41–1) 283 21 11

4. ADO's consent to the withdrawal of debt collection No. 9519224 and the payment order in connection therewith shall not form the basis for any claim by MDC for damages for wrongful attachment against ADO. MDC shall not argue that a payment order is required for ADO to maintain its attachment against MDC's assets in Switzerland.

5. On or before April 12, 1996, MDC shall submit, for *in camera* review, all statements in their unredacted form reflecting the fees and costs incurred as a result of the conduct for which it seeks monetary sanctions against ADO and its counsel. MDC shall personally serve ADO with the statements submitted to the Court for *in camera* review but may redact from those statements any information that constitutes work product or attorney-client privileged communications or is not relevant to the Court's determination of the reasonableness of the fees and costs to be awarded as a monetary sanction against ADO and its counsel. MDC shall also file with the Court the redacted statements it serves upon ADO.

6. On or before April 26, 1996, ADO may file objections to the redactions in MDC's statements. On or before May 17, 1996, the parties are directed to submit legal briefs no longer than ten pages in length which address whether MDC's fees and costs are reasonable and directly related to the conduct found to be sanctionable by the Court under Rule 11, Fed.R.Civ.P., the Court's inherent powers, Local Rule 27 and 28 U.S.C. § 1927.

7. The Court awards sanctions against ADO and its counsel based on the findings made by the Court during the March 4 and March 28, 1996 hearings on this matter.

IT IS SO ORDERED.

Dated: April 24, 1996