The LUBRIZOL CORP., Plaintiff-Appellant,

v.

EXXON CORP., Charles R. Evans, Richard D. Lower, and GATES Data Center, Defendants-Appellees.

No. 91-2514.

United States Court of Appeals,

Fifth Circuit.

April 15, 1992.

Appeal from the United States District Court for the Southern District of Texas.

Before POLITZ, Chief Judge, KING, and EMILIO M. GARZA, Circuit Judges.

PER CURIAM:

The Lubrizol Corporation ("Lubrizol") commenced this action for fraud against the Exxon Corporation ("Exxon"), two Exxon employees ("Evans" and "Lower"), and an entity called GATES Data Center on the grounds that defendants had mishandled confidential Lubrizol information. Exxon counterclaimed for litigation expenses incurred because of Lubrizol's breach of a covenant not to sue entered into as part of a settlement agreement. The district court granted judgment in favor of defendants as to Lubrizol's claims. Those claims were separately appealed, and we affirmed the district court's summary judgment on them.

As for Exxon's counterclaim, the district court, ruling that Lubrizol's breach of the parties' covenant not to sue was obvious, granted judgment in Exxon's favor. As a sanction for Lubrizol's failure to comply with the district court's order directing Lubrizol to submit specific attorney's fees information, the court

accepted Exxon's proof of its attorney's fees and awarded Exxon judgment for $2,424,462.04.  Lubrizol now appeals that judgment.

Finding that Lubrizol's breach was obvious and that the district court has broad discretion to sanction Lubrizol, we affirm.

I

This case is the postscript to one we have heard before.[1]  The following is a summary of the facts and procedural background relevant to this appeal.

This action arises out of a lawsuit—the so-called "computer dispute"—Lubrizol instituted in 1982 against Exxon in the United States District Court for the District of New Jersey.  During discovery in the New Jersey suit, the parties stipulated to a protective order requiring identification of all individuals having access to the confidential information exchanged between the parties.  That order also specified the locations where this information was to be housed and designated that the Exxon law department would have exclusive control over the computer system

---

[1]For a full narration of the facts, see *Lubrizol Corp. v. Exxon Corp.,* 871 F.2d 1279 (5th Cir.1989).  In that opinion authored by Judge Edith H. Jones, the court firmly rejected Lubrizol's argument that the covenant not to sue did not embrace its fraud claims.  The court held that the settlement agreement "is unambiguous insofar as it released any claim that Lubrizol might have brought against Exxon resulting from the computer dispute."  871 F.2d at 1286.  Also, the court was highly critical of Lubrizol's arguments to the contrary, saying they were "too contradictory ... to be credited" and had an "air of unreality" that was "too thin."  *Id.* at 1284 n. 7, 1286.

storing the confidential information. Asserting that Exxon had violated this protective order, Lubrizol moved for sanctions. In September 1984, the parties signed a settlement agreement that disposed of all claims in the New Jersey case and provided for the entry of a stipulation of dismissal with prejudice.

Lubrizol then filed a complaint in the United States District Court for the Southern District of Texas against defendants Exxon, Lower, and Evans, seeking some $200,000 in compensatory damages allegedly caused by fraud and violations of the New Jersey protective order. After two years of hotly contested discovery, Lubrizol asserted that, because Exxon had deliberately destroyed evidence, it could prove only about $40,000 in compensatory damages. Exxon counterclaimed for breach of the settlement agreement, violation of the New Jersey protective order, and fraud; Lower and Evans counterclaimed for defamation. Ultimately, the district court granted Exxon's motion for summary judgment, which Lubrizol appealed to this court. *See generally Lubrizol,* 871 F.2d at 1279.

In considering Lubrizol's first appeal, we held that Lubrizol's fraud claims had been made in the earlier New Jersey federal case in the form of motions for sanctions concerning the computer dispute. Following that decision, and with Exxon's counterclaim for breach of the covenant not to sue still pending, Lubrizol—without prior notice to the district court, this court, or to Exxon—filed a new lawsuit in the New Jersey federal district

court seeking reformation of the settlement agreement between Lubrizol and Exxon to exclude settlement of the computer dispute. Exxon filed a motion to dismiss the New Jersey action, which was granted on January 29, 1990. Lubrizol then appealed to the Third Circuit, which affirmed that dismissal. *See Lubrizol Corp. v. Exxon Corp.,* 929 F.2d 960 (3rd Cir.1991).

Meanwhile, back in the Texas action, Exxon filed a motion for summary judgment on its counterclaim for litigation expenses incurred because of Lubrizol's breach of the covenant not to sue—a covenant entered into as part of the settlement agreement resolving Lubrizol's original New Jersey action. Exxon argued that, since Lubrizol breached the settlement agreement by reasserting claims that the United States District Court for the Southern District of Texas and this court found were clearly and unambiguously covered by Lubrizol's covenant not to sue, Lubrizol's breach was obvious as a matter of law. Lubrizol filed a counter motion, arguing that its breach was not obvious and that it had acted in good faith as a matter of law. In November 1990, the district court granted Exxon's motion and denied Lubrizol's.[2]

During a December 1990 conference, Exxon and Lubrizol agreed

---

[2]Lubrizol then filed a motion for reconsideration, or, in the alternative, for certification under section 1292(b) of Title 28 for an interlocutory appeal. In its motion for reconsideration, Lubrizol argued for the first time that Exxon should be estopped from claiming the breach was an obvious one because of statements made by Exxon that allegedly led Lubrizol to believe that the computer dispute had not been settled. The district court denied this motion on that grounds that Lubrizol's assertion of estoppel was untimely.

to submit affidavits to support and contest Exxon's litigation expenses. Exxon filed two affidavits to prove total litigation expenses of $2,424,462.04, which was accompanied by two volumes of supporting documentation. Lubrizol then filed a motion to have the court set a discovery schedule, to which the district court responded by ordering ("February 1991 order") Lubrizol to file a statement of any necessary discovery including, but not limited to, the name of anyone to be deposed and the reason why. Lubrizol responded by filing a ten-page affidavit and thirty-one page memorandum that failed to set forth the items and amounts it was not contesting, the amounts that it considered reasonable for items in dispute, and the names of anyone it wished to depose.

The district court ruled that Lubrizol had failed to comply with its February 1991 order by not providing the information required and, as a sanction for Lubrizol's "egregious" conduct, accepted Exxon's affidavits as uncontradicted. The district court also found the $2.4 million figure to be both reasonable and conservative and found the Exxon affidavits to be thorough and supported by ample documentation; accordingly, the district court awarded Exxon the full $2.4 million.

II

Lubrizol again appeals to this court, this time contending: (a) that the district court erred in ruling that Lubrizol's breach of the parties' covenant not to sue was obvious and by imposing liability in accordance with New York law; and (b) that the

district court abused its discretion when it accepted Exxon's proof of its $2.4 million in litigation expenses as uncontradicted and awarded Exxon judgment for that amount as a sanction for Lubrizol's failure to comply with the district court's February 1991 order.

A

Lubrizol asserts that: (i) according to New York law, attorney's fees may be awarded as damages for a breach of contract only if the contract expressly and unmistakably so provides, or if the award of attorney's fees is authorized by statute or by court rule; (ii) the case relied upon by the district court—*Artvale, Inc. v. Rugby Fabrics Corp.,* 363 F.2d 1002 (2d Cir.1966)—actually supports Lubrizol's position since the case states unequivocally that a party is not subject to damages for a good faith testing of the scope of a covenant not to sue, and the rule set down in *Artvale* requires a finding that a party acted in bad faith before attorney's fees will be awarded for breach of a covenant not to sue;[3] and (iii) the district court erred in finding that contract was "unambiguous." We disagree.

---

[3]Specifically, Lubrizol contends that:

> The district court did not conclude that Lubrizol's fraud claim against Exxon was [a] bad faith breach of the Settlement Agreement between the parties; and the overwhelming evidence in the record of Lubrizol's reasonable belief—based on the statements and conduct of Exxon—that its fraud claim against Exxon was not included in the Settlement Agreement makes the award of attorney's fees erroneous as a matter of law.

Brief for Appellant at 8, *Lubrizol Corp. v. Exxon Corp.,* No. 91-2514 (5th Cir. filed Aug. 30, 1991) ["Lubrizol Brief"].

It is undisputed that, by its express terms, the Settlement Agreement entered into by the parties on September 7, 1984 is governed by New York law. Also, we have already decided "that the settlement agreement is unambiguous insofar as it released any claim that Lubrizol might have brought against Exxon resulting from the computer dispute." *Lubrizol,* 871 F.2d at 1286.[4] The question now before this court is whether the district court correctly applied New York law in finding that Lubrizol's breach of the parties' covenant not to sue was obvious and, in accordance with that finding, correctly imposed liability.

In awarding Exxon its litigation expenses, the district court relied upon *Artvale,* 363 F.2d at 1002—a case that both frames the issue before us and sets a standard for resolving it:

> The question, in other words, is to be solved not by invoking an abstract rule of law but by seeking to determine what the parties fairly contemplated [in drafting their Settlement Agreement], or would have had they addressed their minds to the problem. Certainly it is not beyond the powers of a lawyer to draw a covenant not to sue in such terms as to make clear that any breach will entail liability for damages, including the most certain of all—defendant's litigation expense. Yet to distill all this out of the usual formal covenant would be going too far; its primary function is to serve as a shield rather than as a sword, often being employed instead of a release to avoid the common law rule with respect to the effect of a release on joint tort-feasors. *In the*

---

[4]Although this Settlement Agreement is part of the record before this court, *see* Record Excerpts of Appellant at tab 16, p. 120, *Lubrizol Corp. v. Exxon Corp.,* No. 91-2514 (5th Cir. filed Aug. 30, 1991) ["Record Excerpts"], the parties originally agreed that this Agreement would remain confidential. *Id.* at 129, art. VII, ¶ 7.01. In deference to this agreement between the parties and the fact that we do not feel it would make a substantial contribution to this opinion, we abstain from quoting the actual text in any detail.

*absence of contrary evidence, sufficient effect is given the usual covenant not to sue if, in addition to its service as a defense, it is read as imposing liability only for suits brought in obvious breach or otherwise in bad faith—clearly not the situation here.*

*Id.* at 1008 (emphasis added).[5]  In short, we must determine whether the district court correctly found that Lubrizol's suit was "brought in obvious breach [of the covenant not to sue] or otherwise in bad faith."[6]

The district court, applying the *Artvale* rule, found that "Lubrizol's breach of the covenant not to sue was an obvious one."[7]

---

[5]The *Artvale* rule has been applied by courts deciding cases under New York law.  *See, e.g., Bellefonte Re Ins. Co. v. Argonaut Ins. Co.,* 757 F.2d 523 (2nd Cir.1985);  *Le Cordon Bleu, S.A. v. BPC Pub. Ltd.,* 451 F.Supp. 63 (S.D.N.Y.1978);  *Cefali v. Buffalo Brass Co.,* 748 F.Supp. 1011 (W.D.N.Y.1990).

[6]Lubrizol argues that "obvious breach or otherwise in bad faith" requires a separate finding of bad faith.  See Lubrizol's Brief at 19.  Lubrizol shifts the emphasis to "obvious breach *or otherwise* in bad faith."  To reiterate Judge Jones' reply to a similar argument made by Lubrizol, "[w]e cannot accept either the grammatical or linguistic underpinnings of this argument." *Lubrizol,* 871 F.2d at 1286.  *See Cefali,* 748 F.Supp. at 1011 (awarding litigation expenses to defendant that prevailed on its New York common law counterclaim for an obvious breach of a covenant not to sue, and concluding that the court did not, therefore, need to rule on defendant's motions for litigation expenses on grounds that plaintiffs' claims were baseless and made in bad faith).

[7]More specifically, the district court held that:

> Both this court and the Fifth Circuit have found that the claims brought by Lubrizol in this case were clearly and unambiguously released in the New Jersey Settlement Agreement.  Consequently, there can be no genuine factual dispute regarding whether Lubrizol's breach of the covenant not to sue was an obvious one.  Exxon's motion for summary judgment as to Lubrizol's liability for damages, including attorney's fees and other litigation expenses, should be granted.

Record Excerpts at tab 9, p. 68 (Memorandum and Order filed

We agree.  Lubrizol's chief contention is that its breach was a good faith test of the covenant not to sue—a practice recognized as acceptable in *Artvale.*  As support for this proposition, Lubrizol notes that the district court originally denied Exxon's motion to dismiss in 1986.  Lubrizol also relied upon communications between Lubrizol's chief legal officer, Roger Hsu, and Exxon Chemical Company's general counsel, James Phillips—evidence that the district court and this court refused to consider on the grounds that (i) the parol evidence rule bars consideration of prior statements to contradict an unambiguous covenant, and (ii) because the settlement agreement unambiguously prohibits subsequent modifications.  *See Lubrizol,* 871 F.2d at 1286–87;  Record Excerpts at tab 11, pp. 81–83.

First, in its June 1990 Memorandum in Opposition to Exxon's Motion for Summary Judgment, Lubrizol admitted that its "actions involve no direct or deliberate challenge to the scope of the settlement agreement[.]"  We find that this discredits Lubrizol's good-faith assertion argument.  Second, the district court originally denied Exxon's motion to dismiss.  We note that this early ruling of the district court was vacated by that same court's July 27, 1987 order, which this court later affirmed.[8]  Third, we stand behind our earlier decision and again refuse to consider the

Nov. 8, 1990).

[8]Judge DeAnda vacated his earlier order after the New Jersey settlement agreement and order of dismissal were introduced at the trial and he had the opportunity to reexamine these exhibits.

Hsu-Phillips communications. Our reasons have not changed.[9] Accordingly, we find that Lubrizol's breach of the parties' covenant not to sue was obvious and that the district court rightfully imposed liability in accordance with New York law.

B

At a conference on December 12, 1990, the district court announced that it would hear, via affidavits, Exxon's proof of litigation expenses and Lubrizol's counterproof. Exxon complied by filing affidavits providing $2,424,462.04 in litigation expenses.

---

[9]*See Lubrizol,* 871 F.2d at 1286-87. Even if the Hsu-Phillips communications were relevant to the question of obvious breach, Lubrizol cannot assert with credibility that such communication gave Lubrizol a good-faith belief that it could file suit against Exxon on claims that Lubrizol had clearly and unambiguously covenanted never to reassert. Lubrizol asserts that its alleged good-faith belief that it could file suit was based on "Exxon's own statements [by Phillips] that it did not consider the computer matter to have been settled by the Settlement Agreement." Lubrizol's Brief at 22. Lubrizol conveniently overlooks an April 12, 1985 letter from Phillips to Hsu that predates Lubrizol's suit and makes very clear Exxon's view that the computer dispute was settled:

> With respect to the reference in your April 4, 1985 letter to the "unresolved status of the computer issue," I do not agree with your characterization of the events surrounding the adjournment of Lubrizol's motion on that subject in the New Jersey case. Exxon and Lubrizol mutually agreed to adjourn your renewed motion so that the apparently fruitful settlement discussions would continue without diversions resulting from peripheral matters. That was why we both authorized your counsel, Mr. Del Deo, to advise Judge Debevoise that the parties were engaged in serious settlement discussions and that the hearing on the renewed computerization motion should be adjourned. As you know, that decision proved sound as we were able to agree to a settlement shortly thereafter and thus avoided any necessity for the New Jersey Court to rule on what had become a moot point.

Lubrizol failed to comply—even after it was given a second chance.[10] Accordingly, the district court decided to sanction Lubrizol by accepting Exxon's affidavits as uncontradicted.[11]

_____

[10]Consider the district court's summation of Lubrizol's failure to comply with the December 12 order:

> Instead of the counteraffidavit which Lubrizol was to file in response to Exxon's affidavits, Lubrizol filed a motion for the Court to set a schedule for discovery. In order to provide Lubrizol with a second opportunity to meet its obligations under the December 12 order, the court signed an order on February 14, 1991, directing Lubrizol to file an affidavit setting forth (1) those items and amounts which were not contested, (2) the amounts which Lubrizol would consider reasonable for those items in dispute, and (3) a statement regarding what discovery was needed by Lubrizol, including the name of anyone to be deposed and the reason for the deposition. Lubrizol again failed to comply with the requirements of the Court, filing only a blanket objection to Exxon's submission "in its entirety." Lubrizol did not set forth any items and amounts which were not contested or the amounts it would consider reasonable for those items in dispute. Instead, Lubrizol made broad, general complaints about the alleged lack of detail in the Exxon affidavits. Lubrizol did not provide the Court with the name of any person needed to be deposed and the reason for the deposition. Instead, Lubrizol simply maintained, again in very broad and general terms, that it needed more discovery.

Record Excerpts at tab 2, pp. 50–51.

[11]_Id._ at 51–52:

> Having been given two opportunities to submit a counteraffidavit as required by the Court and having failed on each occasion to do so, Lubrizol is no longer entitled to submit its counteraffidavit and Exxon's affidavits will be accepted as uncontradicted. The court recognizes that the large damages claim in this case makes this sanction seem harsh. The Court also finds, however, that Lubrizol's conduct has been egregious and that this severe sanction is both proper and virtually unavoidable.

> Because the Exxon affidavits are undisputed by counteraffidavit, there is no factual issue to be resolved by a trier of fact. Based upon the case law

The sanction imposed by the district court is severe. However, "[t]he question, of course, is not ... whether the Court of Appeals ... would as an original matter have [chosen the sanction]; it is whether the District Court abused its discretion in doing so." *National Hockey League v. Metropolitan Hockey Club,* 427 U.S. 639, 642, 96 S.Ct. 2778, 2780, 49 L.Ed.2d 747, *reh'g denied,* 429 U.S. 874, 97 S.Ct. 197, 50 L.Ed.2d 158 (1976). Recently reinforced by the Supreme Court, the sanctioning power of district courts is potent:

> It has long been understood that "[c]ertain implied powers must necessarily result to our courts of justice from the nature of their institution," powers "which cannot be dispensed with in a court, because they are necessary to the exercise of all others." For this reason, "Courts of justice are universally acknowledged to be vested, by their very creation, with power to impose silence, respect, and decorum, in their presence, and submission to their lawful mandates." These powers are "governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases."
>
> * * * * * *
>
> As we recognized in *Roadway Express* [*v. Piper,* 447 U.S. 752, 100 S.Ct. 2455, 65 L.Ed.2d 488], outright dismissal of a lawsuit, which we had upheld in *Link* [*v. Wabash R. Co.,* 370 U.S. 626, 82 S.Ct. 1386, 8 L.Ed.2d 734], is a particularly severe sanction, yet is within the Court's discretion. Consequently, the "less severe sanction" of an assessment of attorney's fees is undoubtedly within a court's inherent power as well.
>
> * * * * * *
>
> [A] court may assess attorney's fees as a sanction for the " "willful disobedience of a court order.' " Thus, a court's

set forth above, the pleadings in this case, and the uncontradicted affidavits submitted by Exxon, the Court finds that Exxon has proved damages on its counterclaim in the amount of $2,424,462.04.

> discretion to determine "[t]he degree of punishment for contempt" permits the court to impose as part of the fine attorney's fees representing the entire cost of the litigation.

*Chambers v. Nasco, Inc.,* --- U.S. ----, ----, 111 S.Ct. 2123, 2132–33, 115 L.Ed.2d 27 (1991) (citations omitted).

The district court's February 14 order[12] bestowed upon Lubrizol the opportunity to conduct discovery into Exxon's litigation expenses, and, had Lubrizol exercised that opportunity, it is highly likely that the district court would have heard its arguments and Exxon's counterarguments. Rather, Lubrizol failed to comply and has missed its opportunity to persuade the district court as to what constitutes a reasonable fee.

Lubrizol goes on to argue that the award of attorneys' fees made to Exxon was improper because Exxon made no showing of the reasonableness of the fees requested. Lubrizol urges us to remand the case to the district court with instructions to make the inquiry mandated by this Court in *Johnson v. Georgia Highway Express,* 488 F.2d 714 (5th Cir.1974). We decline to do that. The district court found that when compared to the $2,028,000 incurred by Lubrizol for two years of pre-trial proceedings, the $2,400,000 incurred by Exxon for the entire six-year duration of this litigation is "both reasonable and conservative."[13] We review that

---

[12]*See supra* note 15.

[13]The district court made the following analysis:

> The amount claimed by Exxon ($2,424,462.04) does not include expenses for paralegal services or time spent

conclusion under an abuse of discretion standard.[14] We are not prepared to say, with the case in its peculiar procedural posture as a result of Lubrizol's failure to comply with the district court's order, that the district court abused its discretion in arriving at the amount of the fee. Indeed, the district court's conclusion is perfectly reasonable. To send this case back for the district judge to go through the *Johnson* hoops, on the basis of the same record and without any further input from Lubrizol, would be a needless exercise. This case needs to come to an end.

III

on the case by non-attorney executives at Exxon. The claimed amount is only for work performed on this case by Exxon Litigation Section attorneys and for attorneys fees charged to Exxon by outside law firms, fees which were determined to be proper by Exxon and, consequently, paid by Exxon. Additionally, the amount claimed by Exxon is for the entire course of the proceedings. The Court notes that Lubrizol's evidence at trial established that it incurred $2,028,000.00 in attorneys fees during the pre-trial proceedings. Much of the work performed during that stage involved Exxon and Lubrizol working on like matters, albeit from opposing sides. When compared to the amount incurred and deemed reasonable by Lubrizol prior to trial, the $2,424,462.04 claimed by Exxon for the entire litigation is both reasonable and conservative. The damages claim is supported by affidavits which are detailed and comprehensive, and which include two volumes of documentation as exhibits.

[14]*See Von Clark v. Butler,* 916 F.2d 255, 259 (5th Cir.1990); *Leroy v. City of Houston,* 831 F.2d 576, 584 (5th Cir.1987) ("The district court's findings of fact supporting its award are reviewed under the clearly erroneous standard, but the ultimate award of attorneys' fees is reviewed for abuse of discretion."), *cert. denied,* 486 U.S. 1008, 108 S.Ct. 1735, 100 L.Ed.2d 199 (1988); *see also Hensley v. Eckerhart,* 461 U.S. 424, 437, 103 S.Ct. 1933, 1941, 76 L.Ed.2d 40 (1983) (district court has discretion in determining what is reasonable amount for litigation expenses and, because of its superior understanding of the litigation, frequent appellate review is to be avoided).

For the foregoing reasons, we AFFIRM the judgment of the district court.


EMILIO M. GARZA, Circuit Judge, dissenting in part:

I agree with everything in the panel opinion except for the ultimate conclusion not to send this case back to the district court with instructions to calculate Exxon's fee in accordance with the formula prescribed by this court in *Johnson v. Georgia Highway Express,* 488 F.2d 714 (5th Cir.1974); *see also Hensley v. Eckerhart,* 461 U.S. 424, 429–40, 103 S.Ct. 1933, 1937–43, 76 L.Ed.2d 40 (1983) (applying *Johnson* factors), clarified by *Cobb v. Miller,* 818 F.2d 1227, 1231–32 (5th Cir.1987).


In my view, the district court simply has not satisfied our *Johnson* standard.[15] Although I acknowledge that the sanctioning

---

[15]In rendering an award of attorney's fees, we have held that a district court *must* consider:

   (1) the time and labor required;

   (2) the novelty and difficulty of the question(s) presented;

   (3) the skill requisite to properly perform the legal service;

   (4) the preclusion of other employment due to the acceptance of the case;

   (5) the customary fee;

   (6) whether the fee is fixed or contingent;

   (7) the time limitation imposed by the client or the circumstances;

   (8) the amount involved and result obtained;

power of the district court is potent (for example, I agree that the district court may calculate Exxon's fee based solely on the information supplied by Exxon), I am not comfortable in allowing the district court's power to sanction to serve as license for ignoring our *Johnson* formula—especially where the district court has reduced its calculation of attorney fees to a comparative analysis of fees charged by counsel in the case before it and awarded $2.4 million.

Accordingly, I would vacate the amount of the district court's award and remand with instructions to apply the *Johnson* formula to the Exxon-supplied information.

---

(9) the experience, reputation, and ability of the attorneys;

(10) the "undesirability" of the case;

(11) the nature and length of the professional relationship with the client; and

(12) awards in similar cases.

*Id.* at 717-19 (including commentary on each factor).