**Darson H. PERSYN, et al., Plaintiffs,**

v.

**The UNITED STATES, Defendant.**

**No. 91–1535L.**

United States Court of Federal Claims.

Nov. 1, 1996.

Craig L. Austin, San Antonio, TX, for plaintiffs.

Stuart B. Schoenburg, Washington, D.C., for defendant. Major Dawn Scholz, Washington, D.C., of counsel.

## ORDER

MOODY R. TIDWELL, III, Judge:

This Order arises out of an Order of Sanctions filed by the court on June 3, 1996, holding plaintiffs' counsel, Mr. Craig L. Austin, liable for sanctions under RCFC 11 and the court's inherent powers. *Persyn v. United States,* 35 Fed.Cl. 708 (1996) *("Persyn–Sanctions ").* This Order renders and quantifies sanctions against Austin based on defendant's certified statement, filed July 3, 1996, of charges for all expenses, costs, and attorney's fees directly attributable to the defense of the government's position against the areas addressed by the June 3, 1996 Order of Sanctions and pursuant to Austin's reply, filed September 5, 1996.

## FACTS

The substantive facts of this case are set forth in *Persyn v. United States,* 34 Fed.Cl. 187, 190–93 (1995) *("Persyn ").* The procedural facts of the court's Orders to Show Cause and Order of Sanctions are laid out in *Persyn,* 35 Fed.Cl. at 708, and need only be briefly summarized below. In an Order filed on January 19, 1995, the court found, *sua sponte,* that in response to Defendant's Motion for Summary Judgment, Austin appeared to have engaged in a deliberate attempt to mislead the court regarding existing law. *Id.* The court identified the most egregious of these misstatements of law and ordered Austin to show cause why he should not be sanctioned for violation of RCFC 11. Trial of this case took place on June 12–14, 1995 in San Antonio, Texas. At the close of plaintiffs' case-in-chief, defendant moved for a directed judgment. The court allowed defendant's RCFC 52(c) motion in a September 27, 1995 Order. In a separate Order filed the same date, the court directed Austin to show cause why he should not be sanctioned based upon plaintiffs' pretrial filings and the complete lack of evidence at trial to support any colorable claims for relief. The court addressed both Orders to Show Cause in *Persyn–Sanctions.* The court found that in litigating plaintiffs' case, Austin deliberately attempted to mislead the court regarding existing law and failed to conduct a reasonable inquiry into the facts and law to support plaintiffs' claims for relief.

## DISCUSSION

### I. RCFC 11 and the Court's Inherent Powers

Attorneys and parties have an affirmative duty under RCFC 11 to understand and support any papers which they or their representatives sign:

The signature of an attorney or party constitutes a certificate by the attorney or party that the attorney or party has read the pleading, motion, or other paper; that to the best of the attorney's or party's knowledge, information, and belief formed after *reasonable inquiry* it is *well grounded in fact* and is *warranted by existing law* or *a good faith argument* for the extension, modification, or reversal of existing law; and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation.... If a pleading, motion, or other paper is signed

in violation of this rule, the court, upon motion or *upon its own initiative, shall* impose upon the person who signed it, a represented party, or both, an appropriate sanction, which may include an order to pay the other party or parties the amount of the reasonable expenses incurred because of the filing …, including a reasonable attorney's fee.

RCFC 11 (emphasis added). The language of RCFC 11 is identical to that of Fed. R.Civ.P. 11 ("FRCP 11") as it existed from 1983 through 1993.[1] Thus, reliance on FRCP 11 law prior to 1993 is appropriate. *See, e.g., Thornton–Trump v. United States,* 12 Cl.Ct. 127, 130 (1987).

■ The Rule "imposes a duty on attorneys to certify that they have conducted a reasonable inquiry and have determined that any papers filed with the court are well-grounded in fact, legally tenable, and 'not interposed for any improper purpose.'" *Cooter & Gell v. Hartmarx Corp.,* 496 U.S. 384, 393, 110 S.Ct. 2447, 2454, 110 L.Ed.2d 359 (1990); *S. Bravo Systems, Inc. v. Containment Technologies Corp.,* 96 F.3d 1372, 1374–75 (Fed.Cir.1996). The court must determine whether counsel's prefiling inquiries were reasonable by considering all of the circumstances surrounding the case. The court must also assess counsel's credibility to determine whether a paper was supported by facts and law "to the best of the signer's knowledge, information, and belief." *Cooter & Gell,* 496 U.S. at 402, 110 S.Ct. at 2459. This test examines the document in question for reasonableness at the time it was filed. *Garr v. United States Healthcare, Inc.,* 22 F.3d 1274, 1279 (3d Cir.1994). Given these factors, the court determined that Austin breached the duty imposed by Rule 11. *Persyn v. United States,* 35 Fed.Cl. at 713–18; *see Cooter & Gell,* 496 U.S. at 393, 110 S.Ct. at 2454.

■ Rule 11 applies to *every* written paper filed with the court. RCFC 11; *see Westmoreland v. CBS, Inc.,* 770 F.2d 1168, 1174 (D.C.Cir.1985). The signature of an attorney on a paper filed with the court is a representation of the "truth and reasonableness of the document." *Business Guides, Inc. v. Chromatic Communications Enters., Inc.,* 498 U.S. 533, 547, 111 S.Ct. 922, 931, 112 L.Ed.2d 1140 (1991). The reasonableness of the attorney's inquiry into the facts and law is judged by an objective standard— "reasonableness under the circumstances." *Id.* at 551, 111 S.Ct. at 933 (quoting the advisory committee's note to FRCP 11). The standard is effectively a negligence standard; evidence of bad faith is not required. Further, a good faith belief in an argument's merit is not enough. "[C]ounsel can no longer avoid the sting of Rule 11 sanctions by operating under the guise of a pure heart and empty head." *Zuniga v. United Can Co.,* 812 F.2d 443, 452 (9th Cir.1987). However, although Rule 11 imposes a requirement that counsel's interpretation of law be objectively reasonable, it need not necessarily be correct to avoid Rule 11 sanctions. *Smith Int'l, Inc. v. Texas Commerce Bank,* 844 F.2d 1193, 1199 (5th Cir.1988).

■ Where a party or attorney's conduct falls below the Rule 11 standard, the court *must* impose sanctions. *See Refac Int'l, Ltd. v. Hitachi, Ltd.,* 921 F.2d 1247, 1257 (Fed.Cir.1990). The amount or type of sanctions should be suitable to the violation and should be the least severe sanction necessary to advance the purposes of the rule. *Smith Int'l,* 844 F.2d at 1197. For example, sanctions may include payment of the other parties' expenses directly caused by the filing of the violative papers. *Cooter & Gell,* 496 U.S. at 406–07, 110 S.Ct. at 2461–62. Additionally, if attorney's fees are assessed as a sanction, the fees must be reasonable, and they must represent costs associated with the violation. *See Smith Int'l,* 844 F.2d at 1197.

■ The inherent power of the federal courts to sanction an attorney for misconduct are derived from "the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." *Link v. Wabash R.R.,* 370 U.S. 626, 630–31, 82 S.Ct. 1386, 1389, 8 L.Ed.2d 734 (1962) (sanctioning plaintiff by

---

1. The Court of Federal Claims has not adopted the 1993 amendments to FRCP 11. Thus, the following statements of law are applicable to the 1983 version of Rule 11.

dismissing his action with prejudice for failure to prosecute); *see also Chambers v. NASCO, Inc.*, 501 U.S. 32, 38, 111 S.Ct. 2123, 2129, 115 L.Ed.2d 27 (1991) (awarding the entire amount of the opposing party's attorney's fees as a sanction for filing meritless motions and pleadings and delaying the case); *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 766–67, 100 S.Ct. 2455, 2464–65, 65 L.Ed.2d 488 (1980) (finding that courts have inherent power to sanction counsel for wilful disobedience of court orders). Judges have inherent power to sanction a litigant who has commenced or conducted an action in bad faith, vexatiously, wantonly or for oppressive reasons. *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 258–59, 95 S.Ct. 1612, 1622, 44 L.Ed.2d 141 (1975) (citing *F.D. Rich Co. v. United States*, 417 U.S. 116, 129, 94 S.Ct. 2157, 2165, 40 L.Ed.2d 703 (1974)). In addition, the Federal Circuit has held that sanctions should be imposed against attorneys who wilfully abuse the judicial process. *Cambridge Prods., Ltd. v. Penn Nutrients, Inc.*, 962 F.2d 1048, 1051 (Fed.Cir.1992).

 Unlike RCFC 11, sanctioning an attorney pursuant to the court's inherent power requires a specific finding of bad faith. *See Chambers*, 501 U.S. at 46, 111 S.Ct. at 2133–34; *see also Baldwin Hardware Corp. v. Franksu Enter. Corp.*, 78 F.3d 550, 561 (Fed.Cir.1996), *cert. denied*, —— U.S. ——, 117 S.Ct. 360, 136 L.Ed.2d 251 (1996). Such sanctions are discretionary if a violation is found. The court has the power to tailor the sanction to best relate to the violation, however the sanction should be tailored to the specific period of manipulation. *See, e.g., L.E.A. Dynatech, Inc. v. Allina*, 49 F.3d 1527, 1531 (Fed.Cir.1995).

 The court found that Austin wilfully abused the judicial process and acted in bad faith by misrepresenting fact and law; consequently, the imposition of sanctions pursuant to the court's inherent powers is appropriate.

*Persyn*, 35 Fed.Cl. at 724. Thus, this court imposes the sanction on Austin pursuant to both Rule 11 and the court's inherent power. However, because the primary tool for imposition of sanctions is Rule 11, the court will use a Rule 11 analysis for determining the appropriate amount of sanctions. *See Chambers*, 501 U.S. at 50, 111 S.Ct. at 2136 (finding that "when there is bad-faith conduct in the course of litigation that could adequately be sanctioned under the Rules, the court ordinarily should rely on the Rules rather than the inherent power").[2]

## II. Amount of Sanctions

Appellate courts have expressed a preference that trial courts provide a clear explanation of how sanctions are computed and of the goal of the court in issuing the sanctions. *Navarro–Ayala v. Nunez*, 968 F.2d 1421, 1427 n. 5 (1st Cir.1992) (citing *Figueroa–Ruiz v. Alegria*, 905 F.2d 545, 549 (1st Cir. 1990), and *Brown v. Federation of State Medical Bds.*, 830 F.2d 1429, 1438 (7th Cir. 1987)). Section II.E. discusses how the sanctions against Austin were computed. The goals in imposing sanctions on Austin are two-fold: (1) to deter Austin from future similar flagrant misbehavior, and (2) to compensate defendant for the considerable added expense incurred as a result of Austin's abuses. Although both goals are important, the primary rationale for the imposition of sanctions on Austin is to deter him from engaging in future abuse. *See Cooter & Gell*, 496 U.S. at 393, 110 S.Ct. at 2454; *accord White v. General Motors Corp.*, 908 F.2d 675, 683 (10th Cir.1990), *cert. denied*, 498 U.S. 1069, 111 S.Ct. 788, 112 L.Ed.2d 850 (1991).

 Despite the requirement that trial courts be precise in issuing sanction orders, the court has "wide discretion" in determining an appropriate amount of sanctions to impose on a party.[3] *In re Mark Indus.*, 751 F.2d 1219, 1224 (Fed.Cir.1984)

---

2. The exercise of a court's inherent powers is a potent tool for sanctioning a litigant, and as such "must be exercised with restraint and discretion." *Id.* at 44, 111 S.Ct. at 2132 (citing *Roadway Express*, 447 U.S. at 764, 100 S.Ct. at 2463). Notably, the *Chambers* Court pointed out that a court may even dismiss a lawsuit in the exercise of its inherent powers; thus, "the 'less severe

sanction' of an assessment of attorney's fees is undoubtedly within a court's inherent power as well." *Id.* at 45, 111 S.Ct. at 2133 (citing *Roadway Express*, 447 U.S. at 765, 100 S.Ct. at 2464).

3. The Supreme Court held that "an appellate court should apply an abuse-of-discretion standard in reviewing all aspects of a district court's

(permitting trial court discretion in imposing remedial sanctions); *see also Kirk Capital Corp. v. Bailey,* 16 F.3d 1485, 1490 (8th Cir.1994) (holding that a Rule 11 sanctions award need only be "appropriate," thereby "according broad discretion to the trial court"). To establish the appropriate amount of sanctions, this court will apply the factors set forth in *White.* In *White,* the court held that "when determining the monetary sanctions appropriate in a given case," the following factors should be considered: (1) the reasonableness of the injured party's attorney's fees and costs; (2) the minimum amount of sanctions necessary to deter; (3) the offending party's ability to pay; and (4) other factors related to the severity of the Rule 11 violation. *White,* 908 F.2d at 684–85; *accord Hendrix v. Naphtal,* 971 F.2d 398, 401 n. 6 (9th Cir. 1992); *In re Kunstler,* 914 F.2d 505 (4th Cir.1990), *cert. denied,* 499 U.S. 969, 111 S.Ct. 1607, 113 L.Ed.2d 669 (1991); *see Kirk Capital Corp. v. Bailey,* 16 F.3d 1485, 1490–91 (8th Cir.1994); *Navarro–Ayala v. Nunez,* 968 F.2d 1421, 1427 (1st Cir.1992); *Dodd Ins. Servs., Inc. v. Royal Ins. Co. of Am.,* 935 F.2d 1152, 1159 (10th Cir.1991). Although some courts have found other factors relevant to establishing the appropriate level of sanctions, the *White* test sufficiently encompasses considerations held important by those courts. *See, e.g., Lubrizol v. Exxon Corp.,* 957 F.2d 1302, 1309 n. 15 (5th Cir.) (Garza, J., dissenting) (noting that the *Lubrizol* court ignored the *Johnson* factors which were employed by the Fifth Circuit in a previous case), *cert. denied,* 506 U.S. 864, 113 S.Ct. 186, 121 L.Ed.2d 131 (1992); *Johnson v. Georgia Highway Express, Inc.,* 488 F.2d 714, 717–19 (5th Cir.1974) (adopting a twelve-point test for reasonableness of attorney's fees); *ADO Finance, AG v. McDonnell Douglas Corp.,* 938 F.Supp. 590, 595 (C.D.Cal.1996) (applying the twelve *Johnson* factors).

### A. Reasonableness (Lodestar) Calculation

▆▆▆▆ In order to divine the amount of sanctions to impose, the first consideration is

whether the injured party's fees are reasonably "incurred because of the improper behavior." *White,* 908 F.2d at 684. Naturally, a fee or cost is not reasonably incurred if the injured party has not exercised its "duty to mitigate costs by not overstaffing, overresearching or overdiscovering clearly meritless claims." *Id.* The trial court's sanction should be calculated " 'with some precision and properly itemized in terms of the perceived misconduct and the sanctioning authority.' " *Lockary,* 974 F.2d at 1176 (citing *In re Yagman,* 796 F.2d 1165, 1184 (9th Cir.), *amended,* 803 F.2d 1085 (9th Cir.1986), *cert. denied,* 484 U.S. 963, 108 S.Ct. 450, 98 L.Ed.2d 390 (1987)).

### 1. Proof of Attorneys' Fees

▆▆▆▆ In order for a trial court to issue sanctions that are precise and itemized, it must use time sheets or some other record of attorney activities. *Id.* at 1177; *Kunstler,* 914 F.2d at 523; *see Dodd Ins. Servs.,* 935 F.2d at 1159 n. 5; *Lubrizol,* 957 F.2d at 1308 n. 13. Courts have found affidavits submitted by the injured attorney to be acceptable records of expenses. *Lockary,* 974 F.2d at 1177; *Kunstler,* 914 F.2d at 523. In this case, defendant filed its "Statement of the United States in Response to the Order of June 3, 1996," which included both time sheets and affidavits. Statement of the United States in Response to the Order of June 3, 1993 [hereinafter Def.'s Statement]. Austin objected that defendant's statement of expenses was not certified and therefore does not constitute sufficient proof. Attorney's Objection and Response to Statement of United States in Response to the Order of June 3, 1996 at 4 [hereinafter Att'y's Objection & Resp.]. However, the entirety of defendant's statement was certified as true and correct, under penalty of perjury, by Mr. Schoenburg who signed as defendant's lead counsel. Def.'s Statement at 10. Because defendant's statement of fees and costs was itself an affidavit, the records submitted by

---

Rule 11 determination." *Cooter & Gell,* 496 U.S. at 405, 110 S.Ct. at 2461; *accord S. Bravo Systems,* 96 F.3d at 1375; *Lockary v. Kayfetz,* 974

F.2d 1166, 1169 (9th Cir.1992), *cert. denied,* 508 U.S. 931, 113 S.Ct. 2397, 124 L.Ed.2d 298 (1993).

defendant are acceptable proof of attorneys' fees for the purposes of determining the amount of sanctions to be imposed.

### 2. Reasonableness of Fees and Costs

■ Although plaintiffs' counsel objects that defendant's statement did not explicitly allege that its fees and costs were reasonable, Att'y's Objection and Resp. at ¶ 1, "[t]he plain language of the rule requires that *the court* independently analyze the reasonableness of the requested fees and expenses." *White,* 908 F.2d at 684 (emphasis added). Thus, whether defendant alleged that its fees and costs were reasonable is irrelevant because the court ultimately must decide the issue.

Some courts have used a twelve-factor test to determine whether fees are reasonable. *E.g., Johnson,* 488 F.2d at 717–19; *ADO Finance, AG v. McDonnell Douglas Corp.,* 938 F.Supp. 590, 595 (C.D.Cal.1996) (citing *Super Power Supply, Inc. v. Macase Indus. Corp.,* 154 F.R.D. 249, 258 n. 14 (C.D.Cal. 1994)). However, the Supreme Court in *Hensley v. Eckerhart,* 461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983), streamlined the test by finding that "[t]he most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Id.* at 433, 103 S.Ct. at 1939. The Court noted that the other factors in the *Johnson* test "may" be considered, however "many of these factors usually are subsumed within the initial calculation of hours reasonably expended at a reasonable hourly rate." *Id.* at 434 n. 9, 103 S.Ct. at 1940 n. 9; *see also Lubrizol,* 957 F.2d at 1308–09 (declining to remand the case with instructions to apply *Johnson* because the district court's sanctions award was reasonable even without using the *Johnson* "hoops"). This court relies on the simplified *Hensley* "reasonable fee" test, rather than the *Johnson* test.

Defendant's statement enumerated its personnel fees and costs, which include costs for Department of Justice (DOJ) attorneys and paralegals, as well as Air Force (AF) attorneys, paralegals and other special personnel. Defendant specified the number of hours spent during each week since plaintiffs filed their complaint, and the hourly rate charged by each person working on the above-captioned case. Def.'s Statement at 3–5 & attachs. A, B.

■ As a matter of business routine, DOJ attorneys record their time on a weekly basis, while AF attorneys do not. Def.'s Statement at 2. Defendant's statement included the weekly time sheet records from the DOJ and the affidavits from the AF attesting to the hours spent by its personnel. However, neither the DOJ nor the AF personnel were paid on an hourly basis, but rather were salaried employees. Thus, to estimate personnel costs incurred due to Austin's misconduct, defendant derived an hourly rate by dividing the individual personnel salaries by 2087, the number of working hours in a year. Def.'s Statement at 2–3. The court finds this manner of calculating an hourly rate both reasonable and appropriate.

The total number of hours spent and the number of personnel used by defendant, however, were not reasonable. As outlined in this court's previous order of sanctions, Austin's misbehavior began with his response to Defendant's Motion for Summary Judgment, filed July 21, 1994, and ended with the completion of trial on June 14, 1995. *Persyn,* 35 Fed.Cl. at 711, 713. All fees and costs incurred by defendant before and after this time period shall be excluded from the sanction because the costs were not incurred as a direct result of Austin's offensive pleading and misconduct. *See Hendrix,* 971 F.2d at 400–01 (holding that approximating the amount of the injured party's expenses attributable to attorney misconduct using a cut-off date was not an abuse of discretion). Thus, work-hours spent by defendant outside the period between July 21, 1994 and June 14, 1995 are excluded from the sanctions calculation.

Of the fees and costs incurred during this period, the court must further inquire which costs and fees were directly "incurred because of the improper behavior." *White,* 908 F.2d at 684. It is arguably difficult to determine how much of defendant's time was directly attributable to Austin's sanctionable

conduct because defendant's statement of fees did not itemize the number of hours spent on specific tasks. However, filings made with the court during this period manifest the specific activities that defendant's counsel undertook in the above-captioned case. After the July 21, 1994 filing of Plaintiff's Response to Defendant's Motion for Summary Judgment, defendant submitted the following significant filings with the court: (1) a response to Plaintiff's Motion to Remand (filed October 3, 1994); (2) a reply to Plaintiff's Response to Defendant's Motion for Summary Judgment (filed October 18, 1994); (3) a response to the court's first Order to Show Cause (filed March 8, 1995); and (4) pre-trial filings in compliance with appendix G of the Rules of the Court of Federal Claims (filed after February 28, 1995) and other trial-associated filings. All of these filings were in direct response to, or because of, Austin's sanctionable misconduct, except for defendant's response to Plaintiffs' Motion to Remand. Each of the filings will be discussed below. Defendant's responses to Plaintiffs' Motion to Remand and Plaintiffs' Summary Judgment Response will be discussed together because defendant worked concurrently on these responses.

a. Defendant's Response to Plaintiffs' Motion to Remand & Defendant's Reply to Plaintiffs' Response to Defendant's Motion for Summary Judgment

Through its discretion to "independently analyze the reasonableness of the requested fees and expenses," the court possesses the ability to apportion such fees and expenses to determine how much time was spent responding to the sanctionable conduct. *White,* 908 F.2d at 684; *see Lockary,* 974 F.2d at 1178 (finding that only a portion of the injured party's time was reimbursable because the pleading in question only contained one sanctionable paragraph). In this case, both Plaintiffs' Motion to Remand and Plaintiffs' Response to Defendant's Motion for Summary Judgment were filed on July 21, 1994. Defendant filed its response to Plaintiffs' Motion to Remand on October 3, 1994, and defendant filed its reply to Plaintiffs' Response to Defendant's Motion for Summary Judgment on October 18, 1994. Although this court did not find Plaintiffs'

Motion to Remand sanctionable, the court did find sanctionable Plaintiffs' Response to Defendant's Motion for Summary Judgment. *Persyn,* 35 Fed.Cl. at 725–26. Thus, because defendant may only be awarded fees and costs relating to its reply to Plaintiffs' Summary Judgment Response, and defendant's weekly time sheets do not specify how much time it spent responding to each specific filing, the court must make a reasonable determination of how many hours defendant spent on each filing.

Plaintiffs' Motion to Remand, filed July 21, 1994, requested the court to transfer the above-captioned case to the United States District Court for the Western District of Texas where the complaint had been filed initially. In the initial proceeding, the district court held that it lacked jurisdiction over the claims against the United States and transferred the case to this court. On appeal, the U.S. Court of Appeals for the Fifth Circuit found it lacked appellate jurisdiction to review the district court's decision to transfer the claims to this court. *Persyn v. United States,* 935 F.2d 69, 75 (5th Cir. 1991). Despite these clear holdings and plaintiffs' subsequent filing of the complaint in this court, plaintiffs still moved to transfer the case from this court back to the district court. Procedurally, this motion appears redundant because the jurisdiction issue had been settled by both the Western District of Texas and the Fifth Circuit. Given these previously settled decisions concerning jurisdiction, responding to Plaintiffs' Motion to Remand probably did not consume as much of defendant's time and resources as did the substantive issues that needed to be addressed in replying to Plaintiffs' Response to Defendant's Motion for Summary Judgment.

This court believes and so finds that a reasonable and conservative apportionment would attribute 75% of defendant's time between July 21, 1994 (the date plaintiffs filed both their motion to remand and their response to Defendant's Motion for Summary Judgment) and October 3, 1994 (the date defendant's response to Plaintiffs' Motion to Remand was filed) to replying to plaintiff's summary judgment response. Seventy-five percent of defendant's hours were therefore

spent responding to Austin's sanctionable pleading. The remaining 25% of defendant's time is attributable to defendant's response to Plaintiffs' Motion to Remand, which, while baseless, is not per se sanctionable. The time expended by defendant between October 3, 1994 and October 18, 1994 is fully reimbursable because defendant would have spent the time solely on its reply to Plaintiffs' Response to Defendant's Motion for Summary Judgment.

Of defendant's total fees and costs incurred during this period, the court may only include in the sanctions award those fees and costs that are reasonable. The court finds reasonable all of defendant's fees and costs incurred during this period in reply to Plaintiffs' Response to Defendant's Motion for Summary Judgment. However, the court must also consider what amount is the minimum to deter. This consideration is discussed below. *See infra* Section II.E.

b. Defendant's Response to the Court's First Order to Show Cause

■ Defendant's fees and expenses incurred in responding to the court's first Order to Show Cause are also reasonable, and are includable in the sanctions award. The issue of whether costs and fees should be awarded to the injured party who responds to a sanctions proceeding initiated by a trial court has not yet been addressed by this court or by the Federal Circuit. Notably, the Ninth Circuit has held that where the injured party raised the motion for sanctions, "the trial court should limit sanctions to the opposing party's more 'direct' costs, that is, the costs of opposing the offending pleading or motion." *Lockary,* 974 F.2d at 1178 (citing *Cooter & Gell,* 496 U.S. at 406–07, 110 S.Ct. at 2461–62). The court in *Lockary,* however, addressed a factually different situation than that of the present case. In *Lockary,* the Ninth Circuit refused to award fees and costs to a defendant for "preparing and supporting their motion for sanctions." *Id.* at 1177. In the present case it is the court that *sua sponte* raised the sanctions issue, and requested that defendant respond to the Order to Show Cause.

The present case is also distinguishable from *Cooter & Gell,* in which the Supreme Court found that a party seeking sanctions is not entitled to an award for the costs of defending the sanctions award on appeal. *Cooter & Gell,* 496 U.S. at 406–07, 110 S.Ct. at 2461–62. In the present case, the fees incurred by defendant are a direct result of the trial court's raising of the sanctions issue in response to Austin's egregious misconduct. Furthermore, defendant's fees and expenses were not incurred in an appellate proceeding.

Because defendant did not initiate the sanctions proceedings, but only responded to this court's directives, defendant's reasonable hours associated with responding to the court's first Order to Show Cause shall be included in the sanctions award. However, as noted earlier, the court may only impose sanctions that are the minimum necessary to deter. The specific amount is discussed below. *See infra* Section II.E.

c. Defendant's Fees & Costs Relating to Trial

■ Defendant's costs incurred in relation to its pre-trial appendix G filings (filed after February 28, 1995), and its other costs associated with trial, are also reasonable because defendant incurred these costs as a direct consequence of Austin's sanctionable misconduct. As stated in the court's order to impose sanctions, Austin gave the court false assurances during the pre-trial conference on May 11, 1995 that he had witnesses and evidence to prove plaintiffs' case. However, Austin failed utterly to substantiate his contentions of law and fact at trial. This court found that "Austin's signing and filing of a *Memorandum of Proposed Findings of Fact* was not objectively reasonable and clearly violated Rule 11." *Persyn,* 35 Fed.Cl. at 722 (1996). Austin also "acted in bad faith when he pursued plaintiffs' claims from the filing of the complaint in this court." *Id.* at 725. As a result of Austin's bad faith misrepresentations, this court proceeded with trial, resulting in costs incurred by both this court and defendant. Thus, all of defendant's reasonable expenses relating to trial, including defendant's pre-trial filings and travel expenses, are includable in the sanctions award to the extent that the total award does not exceed the minimum necessary to deter.

The specific fees and costs are discussed below. *See infra* Section II.E.

#### d. Mitigation of Damages

■ In determining whether the injured party's fees are reasonable, the court must consider whether the injured party fulfilled its "duty to mitigate costs by not overstaffing, overresearching or overdiscovering *clearly meritless* claims." *White*, 908 F.2d at 684 (emphasis added). Defendant included in its statement the staffing expenses incurred by six attorneys, seven non-attorneys (support staff) and seven expert witnesses. Def.'s Statement at 3–5. Defendant also included travel expenses for three attorneys. *Id.* at 6. Many of Austin's misrepresentations were contentions of fact that Austin falsely claimed he could prove. The contentions were not transparently frivolous to either defendant or the court. Accordingly, the court finds that defendant's staffing and travel expenses were reasonable because defendant could not have been aware that Austin had misled the court. Defendant mitigated its damages to the extent possible, given the impossibility of knowing how much evidence Austin possessed to sustain his contentions.

### B. Minimum to Deter

■ Although courts have not ruled consistently on the issue of whether a trial court is required to impose only the minimum amount of sanctions necessary to deter, this court is persuaded by the majority of cases that require such a ceiling. *Dodd Ins. Servs.*, 935 F.2d at 1159–60 (vacating district court's sanctions award where the "minimum to deter" was not considered); *White*, 908 F.2d at 684 (holding that "the amount of sanctions is appropriate only when it is the minimum that will serve to *adequately* deter the undesirable behavior"); *Doering v. Union County Bd. of Chosen Freeholders*, 857 F.2d 191, 194 (3d Cir.1988) (holding that "a district court's choice of deterrent is 'appropriate when it is the minimum that will serve to adequately deter the undesirable behavior'"). *But see Kirk Capital*, 16 F.3d at 1490 (holding only that a court's "sanction be 'appropriate'" and declining to require that the sanction be the "least severe necessary to achieve the objective of the sanction"). Thus, even though defendant's costs and staffing were reasonable and necessary under the circumstances, the court must bear in mind the minimum amount of sanctions needed to deter attorney misbehavior.

Defendant stated that its total amount of fees and costs incurred in the above-captioned case, from the time plaintiffs filed their complaint, was $799,534.55. This amount included personnel costs (attorneys and non-attorneys), expert witness expenses, travel expenses, transcription costs for depositions and court proceedings, and duplication costs. The court finds that awarding defendant sanctions to cover *all* of its expenses, even if limited to the period between July 21, 1994 and June 14, 1995, would result in an award in considerable excess of the minimum needed to deter.

■ However, pinpointing the "minimum to deter" is a question of fact that varies considerably from case-to-case. For example, in *White*, the Tenth Circuit found that a district court's imposition of $172,382.19 in sanctions was the "minimum to deter" plaintiffs' counsel from future misconduct. *White*, 908 F.2d at 680. In *White*, plaintiffs' counsel's mistakes included failure to obtain copies of quintessential documents prior to filing the complaint, making uninvestigated and meritless allegations in the complaint, and asserting incorrect contentions of law. *Id.* at 679–80. The Tenth Circuit affirmed the district court's award of all fees and expenses to defendant as the "minimum to deter" plaintiffs' counsel from future wrong-doing.

By contrast, in *Navarro–Ayala v. Nunez*, 968 F.2d 1421 (1st Cir.1992), the First Circuit found that where defendant failed to conduct a sufficiently reasonable inquiry for a statement made under oath in a single report, the district court's imposition of a $20,000 sanctions award was excessive. *Id.* at 1427. Given the facts of the Rule 11 violation in *Navarro–Ayala*, $20,000 exceeded the minimum amount of sanctions to deter defendant from making future uninvestigated statements. *Id.* The First Circuit affirmed the imposition of Rule 11 sanctions, but reduced the award to $6,500. *Id.* at 1428.

The instant case is as egregious as the situation in *White,* and much more egregious than the misconduct in *Navarro–Ayala.* In determining what amount is the "minimum to deter," these extremes should be borne in mind. Additionally, the offending party's ability to pay is a factor in determining what constitutes effective deterrence.

### C. Ability to Pay

■ In light of the court's primary objective of deterring future misconduct by counsel, the party's inability to pay is a factor in limiting the amount of sanctions. Consideration of ability to pay is important to assure that the court does not impose sanctions as a means of "driving certain attorneys out of practice." *White,* 908 F.2d at 684. Thus the minimum to deter generally cannot exceed the sanctioned party's ability to pay.

In general, "[i]nability to pay what the court would otherwise regard as an appropriate sanction should be treated as reasonably akin to an affirmative defense, with the *burden upon the parties being sanctioned* to come forward with evidence of their financial status." *Id.* at 685 (emphasis added). However, the Fourth Circuit has held that "a monetary sanction imposed without any consideration of ability to pay would constitute an abuse of discretion." *Kunstler,* 914 F.2d at 524. Elaborating on its holding, the Fourth Circuit stated that "the parties should generally be given the opportunity to submit affidavits on their financial status." *Id.*

■ In this case, the court afforded Austin every opportunity to submit affidavits relating to his financial status. The court gave Austin a considerable amount of time to research the law and prepare his submissions, and the court considered Austin's submissions carefully in determining the appropriate amount of sanctions. However, Austin filed *nothing* with this court to address his ability to pay, even though he knew full well of defendant's costs. The court finds that Austin's failure to file such affidavits is indic-ative of his clear ability to pay sanctions in the amount of defendant's full request of $799,534.55.[4]

### D. Other Factors

■ In addition, the court "may consider factors such as the offending party's history, experience, and ability, the severity of the violation, the risk of chilling the type of litigation involved, and other factors as deemed appropriate in individual circumstances" when determining the proper amount of sanctions. *White,* 908 F.2d at 685. Austin was born in 1936, graduated from the University of Texas at Austin School of Law, and was admitted to the State Bar of Texas in 1962. 15 Martindale–Hubbell Law Directory TX1254B (1996). Austin's stated practice areas are eminent domain law, real estate litigation, and general civil trials and appeals. *Id.* Austin's misrepresentations of law and fact occurred in a takings case, the very area of law that he advertises as his area of expertise (eminent domain law). As a general rule, no attorney should make the kinds of misleading statements that Austin has made. However, it is particularly difficult to comprehend how an attorney of Austin's age, education and legal experience can engage in such flagrant misconduct.

■ This court also finds the general severity of Austin's Rule 11 violation a particularly important factor. *See Kunstler,* 914 F.2d at 523. In the present case, Austin exhibited a consistent pattern of misleading the court on issues of law and fact. Despite the court's first Order to Show Cause on January 19, 1995, which expressed the court's dissatisfaction with Austin's misrepresentations of law, Austin clearly failed to conduct a reasonable inquiry into the facts of the case before trial on June 12–14, 1995. *Persyn,* 35 Fed.Cl. at 713, 718. Although at the pre-trial conference Austin assured the court that he had "witnesses and evidence to prove plaintiffs' case," clearly he did not; he did not present evidence at trial to sustain any colorable claims of relief. *Id.* at 718–21.

---

4. Even where an offending party presents the court with affidavits relating to ability to pay, courts have held consistently that mere assertion that an award would force the offending party into bankruptcy is insufficient to show inability to pay. *Gaskell v. Weir,* 10 F.3d 626, 629 (9th Cir.1993); *accord White,* 908 F.2d at 685.

The court has found that Austin's false statements to the court and his persistent failure to make reasonable inquiries well grounded in fact and law justifies the imposition of sanctions. Furthermore, the severity of Austin's violations pushes the court to the conclusion that significant sanctions are appropriate.

### E. Award

The court finds reasonable all of defendant's expenses incurred between July 21, 1994 and June 14, 1995, except defendant's expenses incurred in responding to Plaintiffs' Motion to Remand. However, a sanctions award including all of defendant's expenses would certainly exceed the minimum amount necessary to deter Austin from future misconduct. In light of the foregoing considerations, the court finds that a "minimum to deter" sanctions award should be defendant's attorney's fees and travel expenses for its lead attorney, Stuart Schoenburg, for the period between July 21, 1994 and June 14, 1995. See Table I (enumerating the significant fees and costs considered in determining the amount of sanctions). Of the $799,534.55 requested by defendant, $8,388.50 in costs has already been awarded to defendant pursuant to the court's award on September 28, 1995. See Bill of Costs filed by Defendant on October 27, 1995. Thus, the court excludes these costs from the sanctions award to avoid reimbursing defendant twice. In addition, the fees associated with Schoenburg's response to Plaintiff's Motion to Remand are excluded ($3,993.30) because Plaintiffs' Motion to Remand was not found to be per se sanctionable conduct.

Thus, the court includes in its sanctions award the following fees and costs incurred between July 21, 1994 and June 14, 1995: (1) Schoenburg's fees incurred in replying to Plaintiffs' Response to Defendant's Motion for Summary Judgment ($11,979.90); (2) Schoenburg's response to the court's first Order to Show Cause ($8,462.40); (3) Schoenburg's fees relating to trial ($43,653.60); and (4) Schoenburg's travel costs ($4,070.76). All of these fees and costs were incurred reasonably by defendant, directly as a result of Austin's sanctionable conduct. Furthermore, the court finds that the total sanctions amount is the minimum necessary to deter Austin from future misconduct. Thus, the total sanctions imposed on Austin is $68,166.66. See Table II (computing the total sanctions award).

Table I: Items Considered in Sanctions

| Item | Hourly Rate | Hours | Total |
|---|---|---|---|
| Schoenburg's Response to Plaintiffs' Motion to Remand (7/21/94–10/3/94) | $ 98.60 | 40.5 | $ 3,993.30 |
| Schoenburg's Reply to Plaintiffs' Response to Defendant's Motion for Summary Judgment (7/21/94–10/18/94) | $ 98.60 | 121.5 | $11,979.90 |
| Schoenburg's Response to the First Order to Show Cause (1/19/95–3/8/95) | $103.20 | 82.0 | $ 8,462.40 |
| Schoenburg's Fees & Costs Relating to Trial (2/28/95–6/14/95) | $103.20 | 423.0 | $43,653.60 |
| Schoenburg's Travel Costs (3/21–24/95; 5/6–15/95; 5/30–6/3/95) | | | $ 4,070.76 |
| **Total Fees Attributable to Austin's Misconduct as Reported by Schoenburg Between 7/21/94 & 6/14/95** | | | $72,159.96 |

Table II: Total Amount of Sanctions

| Item | Hourly Rate | Hours Spent | Total |
|---|---|---|---|
| Schoenburg's 1994 Fees (7/21/94–12/31/94) | $98.60 | 162.0 | $15,973.20 |
| Schoenburg's 1995 Fees (1/1/95–6/14/95) | $103.20 | 505.0 | $52,116.00 |
| Schoenburg's Travel Expenses (7/21/94–6/14/95) | | | $ 4,070.76 |
| LESS: Schoenburg's Fees Expended in Responding to Plaintiffs' Motion to Remand (7/21/94–10/3/94) | $98.60 | 40.5[5] | $ 3,993.30 |
| **TOTAL** | | | **$68,166.66** |

---

5. Defendant spent 162 hours between July 21, 1994 and October 3, 1994. During this period,

## CONCLUSION

Accordingly, the court sanctions plaintiffs' counsel, Craig L. Austin, for his flagrant misconduct. The court orders Austin to pay defendant sanctions in the amount of $68,-166.66, which defendant incurred as a direct result of Austin's misconduct.

**IT IS SO ORDERED.**

defendant responded both to plaintiffs' motion to remand and plaintiffs' response to defendant's motion for summary judgment. The court estimates that 25% of defendant's time during this period (40.5 hours) was spent responding to the motion to remand, which was not a pleading subject to sanctions. These hours are omitted from the total amount of sanctions.